NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
28856
24-FEB-2011
07:48 AM**

NO. 28856

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


DAVID THOMPSON; GAIL THOMPSON; STEVEN THOMPSON, by and
through his father and next friend, DAVID THOMPSON, and
mother and next friend, GAIL THOMPSON, Plaintiffs-Appellants,
v. SAINT LOUIS SCHOOL; ALLEN DELONG; and WENDELL STASZKOW,
Defendants-Appellees and JOHN AND JANE DOES 1-10; DOE
PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and
OTHER DOE ENTITIES 1-10, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 07-1-0311)


MEMORANDUM OPINION
(By: Foley, Presiding Judge, Fujise and Leonard, JJ.)

Plaintiffs-Appellants David Thompson (**David**), Gail Thompson (**Gail**), and Steven Thompson (**Steven**) (collectively, **Appellants**) appeal from the Final Judgment (**Judgment**) entered on October 23, 2007, by the Circuit Court of the First Circuit (**Circuit Court**), in favor of Defendants-Appellees Saint Louis School (**St. Louis**) and Wendell Staszkow (**Staszkow**) (collectively, **Appellees**).[1]

Steven attended St. Louis until 2006 when he was expelled. Appellants allege that Steven was wrongfully expelled by Appellees. On appeal, Appellants contend that the Circuit Court erred in granting Appellees' motion for summary judgment.

---

[1] The Honorable Gary W.B. Chang presided.

Based on the record in this case, we conclude that there are no genuine issues as to any material fact and that Appellees were entitled to judgment as a matter of law. We affirm.

I.   BACKGROUND

St. Louis is a private boys' school of Catholic Marianist affiliation. Steven began attending St. Louis from seventh grade in the 2001-2002 school year. On July 1, 2004, Staszkow became employed at St. Louis. On July 1, 2006, Staszkow became the principal and, accordingly, became responsible for overseeing student discipline and other matters. While Steven attended St. Louis, he participated in St. Louis's baseball, football, and wrestling programs. Steven also repeatedly skipped classes and detention periods. In 2003, Keahi Cambra (**Cambra**), a teacher at St. Louis, got into a physical altercation with Steven during a basketball game. Thereafter, Cambra sent a letter of apology to Gail and David.

On September 7, 2005, Steven reportedly choked another student and said, "This fucker's going to die." For this incident, Steven was put on a "Behavioral Contract." On January 18, 2006, Steven was sent out of class for being disrespectful and insubordinate. On January 23, 2006, St. Louis's Administrative Review Board decided that Steven violated his Behavioral Contract and expelled him. On January 24, 2006, David appealed his son's case to the principal. Father Allen DeLong (**Fr. DeLong**) and Staszkow met with David and Gail and agreed that Steven would be given another chance. They decided that any further misconduct "no matter how minor" would be grounds for expulsion. From January 2006 to the May 2, 2006 incident, Steven continued to cut classes and failed to show up for detention.

On the morning of May 2, 2006, Michael Miske (**Miske**), a parent of a student attending St. Louis, threatened Ricksson Pacarro (**Pacarro**), a student attending St. Louis and a friend of Steven, after a traffic incident. Pacarro's grandmother, Yvonne

Pacarro (**Ms. Pacarro**), called St. Louis and spoke with Staszkow in concern for Pacarro's safety. Miske returned to St. Louis that afternoon and approached Pacarro. Steven stepped in and asked what was going on.

Steven testified to the following. Miske told Steven to "go by the bushes so I can lick you too." Steven then told Miske, "Try hit me." Miske threatened Steven again and Steven again told Miske to try to hit him. A teacher then interrupted and asked all the students to go into the classroom.

Staszkow testified that Steven did not listen to the teacher's instructions. According to Staszkow, when Staszkow arrived at the scene, Steven and Miske were still threatening each other. Staszkow stated that he instructed Steven to stop swearing and threatening Miske, and to leave the scene. Steven refused those instructions and continued to swear, shout, and challenge Miske to a fight. Staszkow then walked between Steven and Miske in order to stop a physical altercation. He asked Miske to leave, and Miske left. Staszkow then spent three to five minutes trying to get Steven to calm down and walk away.

Steven testified that Staszkow arrived on the scene and told him to "calm down." Steven stated that he tried to retrieve his backpack, which was about 20 feet from where he was standing, when Miske tried to charge him. After Miske's third attempt at charging at Steven, Miske walked around Staszkow to charge him. Staszkow then positioned himself directly between Steven and Miske. Steven went into the classroom while Staszkow continued to speak to Miske. Steven did not deny that he refused to follow Staszkow's instructions to stop swearing, stop threatening Miske, and leave the scene.

Steven was expelled on the same day, May 2, 2006, immediately following the incident with Miske. Steven testified that later that day, Miske continued to drive around the school and threaten Steven. Steven testified that he called out his

cell phone number to Miske.  Steven filed a police report against Miske for terroristic threatening.  Later that day, Miske and two other adults chased Steven, who was on foot, with their vehicle through Kalihi.  The Honolulu Police Department and paramedics were called to assist Steven.  Steven also filed a police report against Miske for reckless endangerment.  On May 6, 2006, Steven received a message from a friend who relayed a threat from Miske to not press charges.  Steven then filed a police report against Miske for terroristic threatening in the first degree.  On May 23, 2006, the District Court of the First Circuit granted Appellants' Petition For Injunction Against Harassment against Miske.

After Steven's expulsion, on February 16, 2007, Appellants filed the complaint herein against Appellees and Fr. DeLong, alleging:  (1) retaliation; (2) violation of public policy; (3) intentional infliction of emotional distress (**IIED**); (4) breach of an express contract; (5) breach of an implied contract; (6) breach of the covenant of good faith and fair dealing; (7) detrimental reliance; (8) loss of consortium; (9) libel; and (10) slander.  The complaint also sought punitive damages.

On August 16, 2007, St. Louis and Staszkow filed a motion for summary judgment on all claims.  Appellants filed a memorandum in opposition.  A hearing was held on September 17, 2007.  On October 1, 2007, the Circuit Court entered its order granting Appellees' motion.  On the same day, a stipulation to dismiss all claims against Allen DeLong without prejudice was filed.  On October 23, 2007, the Circuit Court entered the Judgment.  Appellants timely filed a notice of appeal.

II.  POINTS OF ERROR

Appellants raise a single point of error, *i.e.*, that the Circuit Court erred in granting Appellees' motion for summary

4

judgment because there was "ample evidence in the record to raise a triable issue of material fact."

III. <u>STANDARD OF REVIEW</u>

Whether a trial court correctly granted or denied a motion for summary judgment is subject to *de novo* review. <u>Blaisdell v. Dep't of Pub. Safety</u>, 119 Hawai'i 275, 282, 196 P.3d 277, 284 (2008). "To create a genuine issue as to any material fact a question of fact presented under a conflict in the affidavits as to a particular matter must be of such a nature that it would affect the result." <u>Richards v. Midkiff</u>, 48 Haw. 32, 39, 396 P.2d 49, 54 (1964) (citations and internal quotation marks omitted); <u>see</u> <u>also</u> <u>Vidinha v. Miyaki</u>, 112 Hawai'i 336, 340, 145 P.3d 879, 883 (App. 2006).

IV.  <u>DISCUSSION</u>

Appellants assert that genuine issues of material fact exist as to the reasons for Steven's expulsion. Viewing the evidence and inferences therefrom in the light most favorable to Appellants, which we must do, the record on appeal reflects that the Circuit Court did not err in granting summary judgment to St. Louis.

Appellants do not dispute Steven's lengthy history of numerous, serious disciplinary infractions. Nor do they dispute that four months before his expulsion, Steven would have been expelled but for being given one more chance conditioned on the consequence that any future violation, no matter how minor, would result in immediate expulsion. Steven thereafter committed multiple further infractions, including the incident involving Miske.

According to an Individual Disciplinary Summary, Steven's last infraction was "inappropriate behavior," the details of which are as follows:

> Student involved in an altercation or attempted
> confrontation with another student's parent on the campus
> even after he was told by an administrator his conduct was
> totally inappropriate, student continued to be aggressive

with this male parent. Mr. Thompson was contacted and informed that his son is being expelled.

Steven admits that he injected himself into a tense situation and dared Mr. Miske to hit him. He does not dispute the school's evidence that he refused to follow repeated instructions of school personnel.

A.   The Retaliation Claim

Appellants' retaliation claim is based on anti-retaliation statutes concerning discriminatory employment practices.[2] Appellants have not identified any case in which employment law statutes have been extended to a private school's expulsion of a student. Instead, Appellants cite EEOC v. Crown Zellerbach Corp., 720 F.2d 1008, 1012 (9th Cir. 1983) for the following proposition:

> To establish a prima facie case of retaliation, an aggrieved individual must show that (1) the individual has engaged in statutorily protected expression; (2) the individual has suffered an adverse action; and (3) there is a causal link between the protected expression and the adverse action. See EEOC v. Crown Zellerbach Corp., 720 F.2d 1008, 1012 (9th Cir. 1983).

Crown Zellerbach concerns unlawful employment practices under the Civil Rights Act of 1964. Id. at 1011-12. The federal statute prohibits retaliation where the plaintiff has opposed the unlawful practices. Id. To support a claim of retaliation, the plaintiff must have had a "reasonable belief" that the employer engaged in unlawful practices in contravention of the Civil Rights Act. Id. at 1013.

Appellants have alleged no facts concerning unlawful practices related to statutorily-protected expression. Crown

---

[2]   They also assert that this claim is based on "the student handbook's anti-retaliation provisions." The handbook contains no such provisions.

Zellerbach is wholly inapplicable to a private school's alleged retaliatory expulsion of a behaviorally-troubled student.[3/]

Appellants' reliance on cases interpreting a Hawai'i anti-retaliation statute is similarly misplaced. Gonsalves v. Nissan Motor Corp. in Hawai'i, Ltd., 100 Hawai'i 149, 58 P.3d 1196 (2002); Aloha Islandair Inc. v. Tseu, 128 F.3d 1301 (9th Cir. 1997) (discussing state statute). HRS § 378-2 (1993) prohibits employers from discriminating on the basis of certain grounds. Gonsalves, 100 Hawai'i at 162, 58 P.3d at 1209; Aloha Islandair, 128 F.3d at 1302. Like its federal counterpart, the statute contains an anti-retaliation provision prohibiting employers from taking adverse action against an individual who has opposed discriminatory employment practices. HRS § 378-2(2); Gonsalves, 100 Hawai'i at 162, 58 P.3d at 1209; Aloha Islandair, 128 F.3d at 1302. As Appellants have alleged no facts regarding unlawful practices under HRS § 378-2, these cases are inapplicable.

Indeed, Appellants apparently contend that these statutes should also apply to the alleged retaliatory expulsion in this case. However, they have not cited, and we have not found, any basis for extending the statutes far beyond their express reach.[4/]

The Circuit Court did not err in entering summary judgment against Appellants on the retaliation claim.

---

[3/]    Appellants' reference to McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a case regarding unlawful racial discrimination under Title VII of the Civil Rights Act, is also unavailing. There is no evidence whatsoever regarding racial discrimination in this case.

[4/]    Even assuming a cause of action exists for retaliatory expulsion, Appellants failed to adduce evidence of a retaliatory motive. The sole evidence Appellants provided regarding retaliation -- Gail Thompson's hearsay testimony -- is inadmissible. St. Louis proffered evidence regarding the source of the alleged retaliation. An apology letter indicates that at a basketball game in 2003, Cambra, who thereafter left St. Louis, had "push[ed], elbow[ed], and play[ed] very roughly with Stev[en]." The bare fact of this prior incident is insufficient to raise an inference of retaliatory motive for an expulsion that occurred three years later.

B.     Public Policy Claim

Appellants argue that St. Louis's expulsion of Steven violated public policy because "expelling a student for protecting another student and his grandmother would frustrate criminal code allowing defense of others and self."

Hawai'i courts have recognized an affirmative claim for "violation of public policy" only in the context of the wrongful discharge of an employee.  See Parnar v. Americana Hotels, Inc., 65 Haw. 370, 380, 652 P.2d 625, 631 (1982) ("[A]n employer may be held liable in tort where his discharge of an employee violates a clear mandate of public policy.").  A wrongful discharge claim may arise if an employee is terminated in contravention of a "clear mandate of public policy."  Smith v. Chaney Brooks Realty, Inc., 10 Haw. App. 250, 256-57, 865 P.2d 170, 173 (App. 1994) (internal quotation marks and citation omitted).  In the discrete context of wrongful discharge, this court elaborated:

> In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme.  Prior judicial decisions may also establish the relevant public policy.  However, courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject.

Id. at 257, 865 P.2d at 173.

Hawai'i courts have not extended claims for violation of public policy beyond the employment law context and we decline to do so here.  Moreover, even if Hawai'i law recognized a public policy claim in the context of expulsion from a private school, Appellants would have had to demonstrate that Steven's expulsion contravened the letter or purpose of a constitutional, statutory, or regulatory provision or scheme.  They failed to do so.  Steven is not a criminal defendant.  St. Louis's decision to expel Steven does not undermine the public policy providing a defense to criminal liability.  The Circuit Court did not err in entering summary judgment against Appellants on the public policy claim.

8

C.    Intentional Infliction of Emotional Distress

To satisfy the elements of IIED, a plaintiff must establish:  "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." Young v. Allstate Ins. Co., 119 Hawai'i 403, 429, 198 P.3d 666, 692 (2008) (internal quotation marks and citation omitted). Appellants have failed to raise genuine issues of material fact as to the alleged outrageousness of St. Louis's actions.

The court must determine the second element -- whether the defendant's actions were outrageous -- unless reasonable minds may differ.  Id.  An act is "outrageous" if it is "without just cause or excuse and beyond all bounds of decency."  Id. (internal quotation marks and citation omitted).  It must be "so extreme in degree as to . . . be regarded as atrocious, and utterly intolerable in a civilized community."  RESTATEMENT (SECOND) OF TORTS § 46 (1965) cmt. d.  "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient.  Young, 119 Hawai'i at 425, 198 P.3d at 688 (internal quotation marks and citation omitted).  An actor is not liable where he or she "has done no more than to insist upon his [or her] legal rights in a permissible way."  Id. (quoting RESTATEMENT (SECOND) OF TORTS § 46 at cmt. g).

Appellants argue that the expulsion was outrageous because it punished a victim, Steven, rewarded an aggressor, Miske, and was motivated by retaliation.  However, the undisputed facts in the record demonstrate that Steven was expelled for his insubordinate and inappropriate behavior in conjunction with the Miske incident, following multiple prior disciplinary infractions, prior warning, and strict conditions for Steven's continued attendance at St. Louis.  We reject Appellants' argument that there was evidence that St. Louis acted outrageously, atrociously, or intolerably.

The Circuit Court did not err in entering summary judgment against Appellants on the IIED claim.

D.   Breach of Express or Implied Contract, including the Implied Covenant of Good Faith and Fair Dealing, and Promissory Estoppel

Appellants base various express and implied breach of contract claims on the agreement that St. Louis would provide education in exchange for tuition.  Appellants contend that the information provided in St. Louis's student handbook constitutes enforceable terms of their agreement.

A number of jurisdictions have recognized a contractual relationship between private schools and their students, even absent an express written contract.  See, e.g., Gorman v. St. Raphael Acad., 853 A.2d 28, 34 (R.I. 2004) ("Numerous jurisdictions have held that a student and private university relationship is essentially contractual in nature.").  Courts may loosely rely on student handbooks as a source of contractual terms, precluding schools from acting in direct contravention of handbook provisions.  Id. ("That a student handbook can be a source of the terms defining the reciprocal rights and obligations of a school and its students is also an idea fairly well established in modern case law."); see also Wisch v. Sanford School, Inc., 420 F. Supp. 1310, 1315-16 (D. Del. 1976); VanLoock v. Curran, 489 So.2d 525, 529-30 (Ala. 1986); Driscoll v. Bd. of Trustees of Milton Acad., 873 N.E.2d 1177, 1185-87 (Mass. Ct. App. 2007); Allen v. Casper, 622 N.E.2d 367, 371 (Ohio Ct. App. 1993); Law v. William Marsh Rice Univ., 123 S.W.3d 786, 792-93 (Tex. Ct. App. 2003).  In applying contract principles, however, courts must be careful to avoid treading on private schools' discretion, particularly with regard to disciplinary measures. Gorman, 853 A.2d at 34; see also Slaughter v. Brigham Young Univ., 514 F.2d 622, 625-26 (10th Cir. 1975); Jones v. Howe Military School, 604 F. Supp. 122, 125 (N.D. Ind. 1984);

Napolitano v. Trustees of Princeton Univ., 453 A.2d 263, 272 (N.J. Super. Ct. App. Div. 1982).

On appeal, Appellants fail to identify any express or implied handbook provision that was violated by St. Louis. The St. Louis handbook specifically provides for expulsion from school based on, *inter alia*, insubordination, including ignoring or defying faculty or staff members after reasonable instructions have been given. Thus, even assuming recognition in Hawai'i of a contract claim based on a student handbook, Appellants' express and implied breach of contract claims are without merit.

Appellants' argument that they brought forward sufficient evidence in support of a claim for breach of the covenant of good faith and fair dealing appears to be based on the timing of Steven's expulsion, two weeks prior to the end of 11th grade. However, in Steven's declaration, he states that he would "get credit" for the school year, although his grades would be negatively impacted by his inability to take finals or turn in further assignments. In addition, absent a showing that Steven's expulsion was wrongful, there is no evidence that St. Louis acted in bad faith.

Similarly, in what appears to be a promissory estoppel claim, Appellants claim to have "detrimentally relied upon Defendants' promises in committing to St. Louis based on [the] student handbook prior to the expulsion." Appellants have failed to demonstrate any promises in the St. Louis student handbook upon which they detrimentally relied. This claim is without merit.

The Circuit Court did not err in entering summary judgment against Appellants on the contract and promissory estoppel claims.

E.   Libel and/or Slander

On appeal, Appellants fail to assert a cogent argument as to their defamation claims. Their sole contention is that

"[b]y innuendo, Saint Louis published to[] many students that the plaintiff was a liar which was read to other students and published in a school letter."  They provide no citations to the record and leave us guessing as to the evidentiary basis for their claims.  As a result, we may deem this point waived.  See Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7) ("Points not argued may be deemed waived.").

Even if we reach the merits of Appellants' defamation claims, we conclude that they failed to raise a genuine issue of material fact.

A statement is defamatory if it "tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  Fong v. Merena, 66 Haw. 72, 74, 655 P.2d 875, 876 (1982) (internal quotation marks and citation omitted).  If the publication, considered as a whole, "is susceptible of both an innocent and a defamatory meaning, it is for the jury to determine the sense in which it was understood."  Cahill v. Hawaiian Paradise Park Corp., 56 Haw. 522, 527, 543 P.2d 1356, 1361 (1975).  The threshold issues is thus whether, "as a matter of law, the statements at issue are reasonably susceptible of a defamatory meaning."  Gold v. Harrison, 88 Hawai'i 94, 101, 962 P.2d 353, 360 (1998).

Although defamatory material need not mention the plaintiff by name, it must refer to the plaintiff by "clear implication."  Yow v. Nat'l Enquirer, Inc., 550 F. Supp. 2d 1179, 1184 (E.D. Cal. 2008) (internal quotation marks and citation omitted).  However, "[a] claimed implication is insufficient to concern a defamation plaintiff when it is not consistent with the plain language and the full import of a defendant's statement."  Kaufman v. Islamic Soc. of Arlington, 291 S.W.3d 130, 145 (Tex. Ct. App. 2009) (internal quotation marks and citation omitted).

Appellants argue that "[b]y innuendo, St. Louis published to[] many students that the plaintiff was a liar which was read to other students and published in a school letter." The letter at issue is, presumably, a May 1, 2006 letter addressed to parents and guardians of St. Louis students, signed by Fr. DeLong. Even construing all inferences in Appellants' favor, the letter does not accuse any particular individual of lying. Instead, in a general exhortation to parents, the letter discusses lying habits of "normal teenager[s]."

The May 1, 2006 letter begins with the author's personal anecdote that "[w]hen I was a teenager my parents didn't know half the things I did." Where the letter employs a singular noun, i.e., "teenager" and "young man," it does so only in the abstract. It discusses the thoughts and motivations of an average teenager to illustrate the general topic of deception. It does not include any factual references that might implicate a particular person or incident.

The core of the letter concerns general advice to parents. Fr. DeLong urges parents to adopt a less disciplinarian approach when confronting their teenage sons about lying. He encourages them to "share your own mistakes with your son" and "create moments when 'confession' is possible." The references to an abstract teenager therefore provide the foundation for a more understanding, reflective approach toward instilling moral principles. The letter makes no mention of Steven. Even under a strained reading, the letter does not clearly implicate any particular individual. The letter is not susceptible of any defamatory meaning. See Cahill, 56 Haw. at 527, 543 P.2d at 1361.

The sole evidence purportedly linking the May 1, 2006 letter to Steven is the declaration of another St. Louis student stating that, on May 3, 2006, "Mr. Jenkins read letter [sic] by Fr. DeLong and mentioned that it relates to an incident that

happened yesterday involving a classmate which we all knew to be Steven Thompson." However, as the letter is dated May 1, 2006, and there is no evidence or allegation that it is wrongly dated, and the final incident leading to Steven's expulsion occurred on May 2, 2006, the student's declaration is insufficient to raise a genuine issue of material fact as to the letter's allegedly defamatory meaning. See Gold, 88 Hawai'i at 102-03, 962 P.2d at 361-62. Morever, there is no evidence in the record whatsoever identifying "Mr. Jenkins." The Circuit Court did not err in entering summary judgment against Appellants on libel claims.

Similarly, as Appellants have presented no evidence that Appellees slandered them, this claim necessarily fails as well.

F. Loss of Consortium

Loss of consortium claims are derivative, as they are based on the underlying claim of a spouse or child who has suffered injury. Brown v. KFC Nat'l Mgmt. Co., 82 Hawai'i 226, 241, 921 P.2d 146, 161 (1996); see also Doi v. Hawaiian Ins. & Guar. Co., Ltd., 6 Haw. App. 456, 463, 727 P.2d 884, 889 (1986). Such derivative claims are barred when the spouse or child's underlying claim of injury cannot be maintained. Brown, 82 Hawai'i at 241, 921 P.2d at 161. As Steven's underlying claims of injury have failed, Appellants' claim for loss of consortium is necessarily barred.

G. Punitive Damages

"[A] claim for punitive damages is not an independent tort, but is purely incidental to a separate cause of action." Ross v. Stouffer Hotel Co. (Hawai'i) Ltd., Inc., 76 Hawai'i 454, 466, 879 P.2d 1037, 1049 (1994). As Appellants' other claims have failed, their prayer for punitive damages also fails.

V.    CONCLUSION

        For these reasons, the Circuit Court's October 23, 2007 Judgment is affirmed.

        DATED:   Honolulu, Hawai'i, February 24, 2011.

On the briefs:

Shawn A. Luiz
for Plaintiffs-Appellants

James H. Ashford
(Cades Schutte LLP)
for Defendants-Appellees
SAINT LOUIS SCHOOL and
WENDELL STASZKOW

Presiding Judge

Associate Judge

Associate Judge